No. 30,349.

Glenn Baldwin, as Administrator of the Estate of C. L. Baldwin, Deceased, *Appellee,* v. Laura E. Devlin, *Appellant.*

(8 P. 2d 320.)

Opinion filed March 5, 1932.

*Guy L. Hursh,* of Topeka, for the appellant.

*Lester M. Goodell, Randal C. Harvey* and *Paul L. Harvey,* all of Topeka, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action to recover for the death of C. L. Baldwin, who was struck, knocked down, dragged, run over and killed by defendant's automobile while he was riding a bicycle one morning to his place of employment.

The accident happened on Seward avenue, in the northeastern part of Topeka. That street runs east and west. Another street, Woodruff, comes into Seward from the south, but does not extend further north. C. L. Baldwin, a Santa Fe shop worker, resided some three blocks northeast of the intersection of Seward and Woodruff. He was accustomed to ride a bicycle to his work. He would come down to Seward avenue and proceed westward for a block or two on the north side of Seward, until he came to Woodruff, where he would turn south and proceed to his place of employment a block or two further south.

On the morning of November 19, 1929, the defendant, who had a Buick automobile, had gone to the western part of the city to carry three school teachers to their classes in a parochial school a block or two east of the place of accident. Defendant was proceeding eastwardly on the south side of Seward avenue, approaching Wood-

ruff, as Baldwin came from the east on the north side of Seward; and as he veered to the south at the intersection of these streets he and his bicycle were caught and momentarily carried on the front bumper of the Buick, then he fell and was rolled or dragged some distance by defendant's car, and then it ran over him. Baldwin was picked up in the street and carried to a near-by fire station, were he died.

Plaintiff's petition contained the usual recitals of fact in such cases and charged defendant with negligence in various respects which brought about the death of Baldwin.

Defendant's answer contained a general denial, and alleged that Baldwin's death was caused by his own negligence in failing to look out for approaching automobiles, and by suddenly and without warning turning southward at Woodruff in front of defendant's automobile and so close to it that the collision was unavoidable. She also charged the deceased with contributory negligence.

Both parties charged violation of city traffic ordinances. Plaintiff's reply supplemented the allegations of his petition with a charge of wantonness on the part of defendant because of her alleged failure to use even slight care to save Baldwin from his imminent peril after the first impact of her car with his bicycle.

On these issues the cause was tried at length. The evidence developed some sharp disputes of fact, which were resolved by the jury in their answers to special questions which must be set down here:

"1. At what point did the automobile and bicycle collide? (In answering this question fix the point of collision either with reference to the center of the intersection of Woodruff and Seward avenues, or the east curb line of Woodruff and the south curb line of Seward.) A. At or near center of intersection of Woodruff avenue and east traffic way Seward avenue.

"2. Was the deceased negligent in the operation of his bicycle? A. No.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"5. Was the defendant negligent in any respect in the operation of her automobile? A. Yes.

"6. If you answer the last preceding question in the affirmative, then state in what particular defendant was negligent. A. Negligent in observing traffic and in the operation of her automobile.

"7. In driving along Seward avenue at and immediately prior to the collision, did the defendant operate her automobile in a reckless manner and in wanton disregard of the rights of others upon the highway? A. Yes.

"8. Was the collision in question unavoidable? A. Yes.

"9. Immediately after the collision, did the defendant use ordinary and reasonable care, under the circumstances, to avoid inflicting further injury upon the deceased? A. No.

"10. If you answer the last foregoing question in the negative, then state:

"(a) Wherein the defendant failed so to do. A. Failing to properly apply her brakes.

"(b) Did such failure on her part contribute to the death of the deceased? A. Yes."

The general verdict was in favor of plaintiff. After disposition of the usual motion for a new trial, judgment was entered for plaintiff.

Defendant appeals, with a formal assignment of errors which her counsel reduce to two questions of law—whether the undisputed evidence disclosed contributory negligence on the part of the deceased, and if so was defendant liable under the doctrine of the "last clear chance."

To support defendant's contention that Baldwin's negligence contributed to the fatal accident defendant directs our attention to the testimony of witnesses who deposed that as Baldwin proceeded westward along the north side of Seward avenue and "as he neared Woodruff he gradually got over near the center of Seward"; that there was then nothing to prevent him seeing defendant's oncoming automobile; that he looked backward and forward and then made an abrupt turn to the south—"about as quick as a man would when riding a bicycle and wanting to cut at right angles with the traffic in which he was going"; and that defendant's automobile was then close to the intersection traveling east. One witness testified:

"I knew that in going to his work he would probably turn down Woodruff from where he was at that time and I knew he was going to have a hard time getting over there."

Defendant and several of her witnesses testified that the collision of the car and the bicycle occurred east of the street intersection. On the other hand, the captain of a near-by fire station, who saw the accident, testified:

"I looked out of the window and saw a man falling in front of an automobile. He was riding a bicycle. His body had not hit the ground but he was in the act of falling. I learned afterwards that it was C. L. Baldwin. I saw the automobile pushing him along in front of the axle a short distance. I saw him hit the ground. The place where he hit the ground was about six feet west of the east curb of Woodruff. . . . After the body hit the ground it, together with the bicycle, was pushed ahead of the front axle. . . . The body was about fifty feet east of the point where it first struck the ground."

Another witness testified:

"When he made the abrupt turn I think he was pretty well to the center

of Woodruff street on the north side of the center of Seward. When Baldwin made the abrupt turn Mrs. Devlin's car was pretty close to the driveway of number six fire station in the line of traffic on Seward avenue."

The driveway of the fire station referred to in the record was on the south side of Seward avenue. The east line of the fire station was 24 feet west of the west curb line of Woodruff street. The fire station itself is 22.5 feet wide and the driveway in front of it is somewhat flaring to a width of 30 feet, perhaps, according to the blue print submitted for our inspection. There was testimony that when defendant passed the driveway of the fire station she increased her speed. It is a fair inference from this evidence, if credence be given it, that Mrs. Devlin mistook the area of the driveway in front of the fire station for a street intersection and having passed it she supposed she might prudently increase her speed for the distance of another block. She testified:

"When I come to an intersection I always slow down. . . . Yes, sir, I always slow for a crossing. . . . Then I started out a little faster."

If Mrs. Devlin did mistake the area in front of the fire station for a street intersection it helps to explain her evidence and that of her witnesses, the school teachers, who testified that the collision occurred east of the intersection. By abundant other testimony, however, to which the jury gave credence, defendant's evidence on this point was not correct, although it is gratifying to believe that she and the ladies who were in her car did not intend to give false testimony.

It is useless, however, to quote further from the evidence, or for this court to discuss the credence to be accorded to it, since we have no power to decide disputed facts. On the point which we have to decide we are bound to hold that Baldwin was not shown to have been guilty of contributory negligence as a matter of law.

In view of that conclusion the question of defendant's liability under the doctrine of the last clear chance is not strictly in the case at all. But assuming it to be in the case, assuming that Baldwin was negligent in turning to the south ahead of defendant's automobile at the time he did, it was the duty of defendant to have stopped her car in the shortest possible time as soon as she became aware of him and his bicycle caught on her car bumpers. According to her testimony she had been driving a car more than ten years, she was not coming fast—fifteen to twenty miles an hour between the inter-

sections; she always slowed down at the intersections to fifteen miles per hour and often to twelve miles or less; she crossed Woodruff that morning at about twelve miles per hour; and her brakes were in good working condition.

"Q. How much distance or in what distance can you normally stop that Buick going at the rate of twelve or fifteen miles an hour? A. Well, I think I stopped that morning—I have stopped in shorter space. That morning it was from thirty feet to fifty I went.

. . . . . . . . . . . . . .

"Q. Now isn't it a fact that that car could be stopped at a speed of twelve to fifteen miles, if you did push on that brake pedal, within twelve feet? A. Well, it was a heavy car. It was a Master Six. I stopped as quick as I could.

"Q. I am not asking you about that morning, but any time when the street was dry—and the street was dry that morning? A. Yes, sir. The brakes could have been tighter.

. . . . . . . . . . . . . .

"Q. With your brakes in a condition that you get good leverage, isn't it true that that car, going twelve to fifteen miles an hour, you could stop within twelve feet? A. Well, seeing a man in front of you—

. . . . . . . . . . . . . .

"Q. That excitement didn't keep you from putting your foot on the brake pedal and pushing with all your strength? A. I think I did.

"Q. And in spite of your pushing with all your might on that brake pedal, the car went thirty feet before it stopped? A. Yes, sir."

According to other testimony, if defendant had had her wits about her, she could have stopped her automobile after her belated discovery of Baldwin caught on the bumpers of her car in time so as not to have dragged him so far and finally to have run over him.

This was a jury case from first to last, with no subtle questions of law to vex either court or counsel, and the judgment is affirmed.

HARVEY, J., not sitting.